**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| MARVEL MARTINEZ, | : | CIVIL CASE NO. |
| Plaintiff, | : | 3:20-CV-1772 (JCH) |
| | : | |
| | : | |
| v. | : | |
| | : | |
| AVANTUS, LLC, ET AL. | : | JANUARY 5, 2023 |
| Defendants, | : | |

**RULING ON MOTION TO CERTIFY CLASS (DOC. NO. 62)**

**INDEX**

I.   INTRODUCTION .................................................................................................. 2

II.   BACKGROUND .................................................................................................. 3

III.   LEGAL STANDARD ........................................................................................... 7

   A.   Standing ...................................................................................................... 7

   B.   Rule 23 ....................................................................................................... 8

IV.   DISCUSSION ..................................................................................................... 9

   A.   Article III Standing ..................................................................................... 9

      1.   Martinez Has Standing............................................................................ 9

      2.   Members of the Class Have Standing.................................................... 12

   B.   Rule 23(a) ................................................................................................ 14

      1.   Numerosity............................................................................................ 14

      2.   Commonality.......................................................................................... 15

      3.   Typicality................................................................................................ 17

      4.   Adequacy .............................................................................................. 18

   C.   Rule 23(b)(3) ........................................................................................... 19

   D.   Rule 23(g) ................................................................................................ 22

V.   CONCLUSION.................................................................................................. 23

I.    **INTRODUCTION**

Plaintiff Marvel Martinez ("Martinez") brings this putative class action against

Avantus, LLC and Xactus, LLC[1], which is a successor in interest to certain Avantus

assets, for alleged violations of section 1681e(b) of the Fair Credit Reporting Act

("FCRA"), section 1681 of title 15, et seq., of the U.S. Code.  Martinez's lawsuit alleges

that Avantus willfully failed to ensure maximum possible accuracy of its credit reports,

leading to the plaintiff being wrongly identified as an international drug trafficker who is

prohibited from conducting business in the United States.  See Pl.'s Mem. at 1–2.

Now before the court is the plaintiff's Motion for Class Certification ("Pl.'s Mot.")

(Doc. No. 62), in which they propose the following class:

> All persons residing in the United States and its Territories about whom
> Defendants sold a consumer report to a third party that included any OFAC
> record using its proprietary UltraAMPS OFAC product, during the period
> beginning July 6, 2020[,] and continuing through thirty (30) days before the date
> of notice to the class.

See Pl.'s Mem. at 2.  Martinez seeks an order certifying the proposed class under

Federal Rule of Civil Procedure 23(b)(3), naming him as class representative, and

designating Francis Mailman Soumilas, P.C. and Sarah Poriss as class counsel.  Id.

For the reasons discussed below, plaintiff's Motion is granted.

---

[1] On July 6, 2020, Avantus, LLC sold certain assets to Consolidated Information Services
Solutions, LLC, which later changed its name to Xactus, LLC.  See Plaintiff's Memorandum of Law in
Support of Class Certification ("Pl.'s Mem.") at 1 n.1 (Doc. No. 65); Defendant's Memorandum of Law in
Opposition to Class Certification ("Def's Mem.") at 1 n.1 (Doc. No. 69).  The parties agree that Xactus,
LLC is the appropriate defendant given the timing of the allegations.  See Pl.'s Mem. at 1 n.1; Def.'s Mem.
at 1 n.1.  Because plaintiff asserts that Xactus, LLC is doing business as Avantus, the court will address
the relevant party as either "Avantus" or "defendant."  See Pl.'s Mem. at 1 n.1.

## II.     BACKGROUND

The U.S. Department of Treasury's Office of Foreign Assets Control ("OFAC") "administers and enforces economic trade sanctions based on U.S. foreign policy and national security goals against threats to national security, foreign policy or economy of the United States."  Complaint ("Compl.") ¶ 8 (Doc. No. 1) (quoting Ramirez v. Trans Union, LLC, 301 F.R.D. 408, 413 (N.D. Cal. 2014); see also Defendant's Exhibit A, Declaration of Christi A. Lawson ("Lawson Decl.") at 2 (Doc. No. 70–1).  As part of their efforts, OFAC keeps a list of "specially designated nationals" ("SDNs")—including terrorists, drug traffickers, and other dangerous individuals—who are barred from doing business in the United States.  Compl. ¶ 9–12; see also TransUnion, LLC v. Ramirez, 141 S. Ct. 2190, 2201 (2021).  American businesses and individuals who transact with SDNs face substantial civil and criminal penalties.  Compl. ¶ 12 (citing 31 C.F.R. § 501 App. A, II).

To aid businesses and individuals in their compliance with the sanctions regime, Avantus offers a product that searches the OFAC list and includes the results as part of the credit report they compile.  See Compl. ¶ 19–22; Plaintiff's Exhibit 2, Deposition of Michele Streeto on November 10, 2021 ("11/10/21 Streeto Dep.") at 36–38, 45–47 (Doc. No. 66–2).  When a customer requests the UltraAMPS OFAC product, the system searches through OFAC data downloaded by Avantus using a standardized name-matching logic.  See Compl. ¶ 22–23; 11/10/21 Streeto Dep. at 77–78.  Regardless of what data a customer provides—like their date of birth or social security number—the proprietary UltraAMPS OFAC product considers only a person's first and last name when identifying matches with the SDN list.  See 11/10/21 Streeto Dep. at 77–78, 82.

Moreover, the product identifies a match with the OFAC list where a person's first or last name is an exact match with an SDN, and their other name starts with the same three letters. Id. at 82–83. If there is a match, the report will flag a "Potential Name Match" followed by the information about the SDN available on the OFAC list. Plaintiff's Exhibit 4, Martinez September 6, 2020 Report ("9/6/20 Report") at 2, 25 (Doc. No. 66–4); 11/10/21 Streeto Dep. at 68. Avantus does not know how many false positive matches the UltraAMPS OFAC product produces. Plaintiff's Exhibit 1, Deposition of Michele Streeto on March 25, 2022 ("3/25/22 Streeto Dep.") at 35–36 (Doc. No. 66–1).

A false positive OFAC match was included when Avantus sold Nexa Mortgage, Inc., a credit report on Martinez as part of his and his wife's efforts to secure mortgage financing. See 9/6/20 Report at 2, 25; 3/25/22 Streeto Dep. at 35; Defendant's Exhibit H, Deposition of Diana Martinez on May 24, 2022 ("5/24/22 D. Martinez Dep.") at (Doc. No. 70–8) at 43–44. The UltraAMPS OFAC product flagged Marvel Mauricio Martinez as a potential match for "Maria Icela Chavez Martinez," a Mexican national tied to an international drug trafficking organization. See 9/6/20 Report at 2, 25; 11/10/21 Streeto Dep. at 83. The proprietary product identified the match on the basis of their shared last name, as well as the first three letters of their first names: "Mar." See 11/10/21 Streeto Dep. at 83. Plaintiff Martinez's birthday, which was included in Avantus' report, is completely different from Maria Icela Chavez Martinez's birthday, which was also provided by the defendant. See 9/6/20 Report at 2, 25.

Martinez's mortgage broker at Nexa Mortgage, Wade Betz, never believed that the plaintiff was Maria Icela Chavez Martinez. See Defendant's Exhibit J, Deposition of Wade Betz on May 4, 2022 ("5/4/22 Betz Dep.") at 73–74 (Doc. No. 70–10). Still, Betz

instructed Mr. and Mrs. Martinez that they needed "to work to remove the OFAC verbiage from the credit report."  Plaintiff's Exhibit 6, Email from Betz to Martinez on September 9, 2020 ("9/9/20 Betz Email") (Doc. No. 66–5).  Although neither Mr. nor Mrs. Martinez submitted a formal dispute with Avantus about the OFAC alert, Mrs. Martinez testified that she attempted to do so but was unable to reach a representative. See 5/24/22 D. Martinez Dep. at 28–29.  However, even if Mrs. Martinez had been successful in submitting a dispute, Avantus would not have removed the OFAC message.  See 3/25/22 Streeto Dep. at 38–39.  Instead, Avantus would have demanded substantiating documentation before adding a comment to a different section of the report indicating that the individual does not "appear to match the OFAC potential hit result[ ]."  Id. at 37.

Initially, a lender refused to review Martinez's application on the basis of the OFAC alert on the credit report; however, Betz did locate another lender that was willing to proceed as long as the plaintiff could prove he was not Maria Icela Chavez Martinez. See 5/4/22 Betz Dep. at 75–76.  Ultimately, Mr. and Mrs. Martinez did not decide to move forward with that lender, instead choosing to focus on raising their credit scores. Id. at 89–90.  Still, Mr. Martinez felt "fear and shame" regarding the false positive match, noting that he was afraid to travel or apply for additional credit in light of the confusion. See Plaintiff's Exhibit 7, Marvel Martinez Deposition on January 31, 2022 ("1/31/22 M. Martinez Dep.") at 20, 83 (Doc. No. 66–7).

Discovery in this case revealed at least 5,454 individuals like Mr. Martinez who had their credit report compiled by the defendant and sent to a third party with an OFAC partial match alert.  See Plaintiff's Exhibit 9 (Doc. No. 66–9).  To this point, defendant is

unaware of a single instance where a purported OFAC hit accurately matched an SDN

on the OFAC list.  See 3/25/22 Streeto Dep. at 36.

In an effort to address some of the concerns over false matches, Avantus added

a new OFAC disclaimer in February 2021 to the "Fraud Messages" section of consumer

reports.  The disclaimer now notes that:

> In compliance with section 326 of the Patriot Act, your credit
> provider has checked the applicant(s) name(s) supplied by the
> borrower against the Office of Foreign Asset Control (OFAC) data
> base maintained by the Department of the Treasury. Any messages
> returned by your credit provider are located in this section of this
> credit report. The OFAC information confirms only that a name
> appears on the OFAC list that may be similar to the name of a person
> who is the subject of this report. It is your responsibility to use
> additional information to determine whether this information is
> related to the individual who is the subject of this report.  This
> information is provided to assist with fraud prevention only and
> should not be relied upon to take any adverse action.  To determine
> if the alert is valid, visit the treasury department's (sic) website at
> https://home.treasury.gov/policy-issues/financial-sanctions/faqs/5
> or contact OFAC directly at 800-540-6322.

Defendant's Exhibit K, New Fraud Messages Disclaimer ("New Fraud Disclaimer") (Doc.

No. 70–11).  Although an OFAC hit appears twice in a credit report—on the first page

and again towards the end of the document, see 9/6/20 Report at 2, 25—this new

disclaimer language was only added to the second alert.  See 3/25/22 Streeto Dep. at

26, 29–30.  Additionally, UltraAMPS OFAC product's name-matching logic remains the

same.  See Plaintiff's Exhibit 10, Michael Delaporta Deposition on March 25, 2022

("3/25/22 Delaporta Dep.") at 31; 3/25/22 Streeto Dep. at 22.

On November 25, 2020, Martinez filed his one-count Complaint alleging Avantus

willfully failed to follow reasonable procedures to ensure maximum possible accuracy of

the consumer reports it sold in violation of section 1681e(b) of the FCRA.  See Compl. ¶

52.  Avantus answered on February 11, 2021.  <u>See</u> Defendant's Answer to Class Action Complaint ("Def's Answer") (Doc. No. 10).  The court now considers Martinez's Motion to Certify the Class under Federal Rule of Procedure 23, <u>see</u> Pl.'s Mot.; Pl.'s Mem.; Plaintiff's Reply in Further Support of Class Certification ("Pl.'s Reply") (Doc. No. 76), which Avantus opposes, <u>see</u> Def.'s Mem.; Defendant's Sur-Reply to Plaintiff's Motion for Class Certification (Doc. No. 83).

### III.    LEGAL STANDARD

#### A.    <u>Standing</u>

Under Article III, Section 2 of the U.S. Constitution, the jurisdiction of federal courts is limited to the resolution of cases and controversies.  <u>See, e.g.</u>, <u>Mahon v. Ticor Title Ins. Co.</u>, 683 F.3d 59, 62 (2d Cir. 2012).  To ensure that federal courts consider only "those disputes in which the parties have a concrete stake", plaintiffs must show that they have "standing."  <u>Bhatia v. Piedrahita</u>, 756 F.3d 211, 218 (2d Cir. 2014) (quoting <u>Friends of the Earth, Inc. v. Laidlaw Env't. Servs. (TOC), Inc.</u>, 528 U.S. 167 (2000)).  A plaintiff must satisfy three elements to show standing: she "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." <u>Spokeo, Inc. v. Robins</u>, 578 U.S. 330, 338 (2016), <u>as</u> <u>revised</u> (May 24, 2016).

Where plaintiffs fail to demonstrate the "irreducible constitutional minimum of standing", <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560 (1992), a court "has no subject matter jurisdiction to hear their claim."  <u>Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.</u>, 433 F.3d 181, 198 (2d Cir. 2005). A lack of standing, like any other "lack of subject matter jurisdiction[,] may be raised at any time."  <u>Wight v. BankAmerica Corp.</u>, 219 F.3d 79, 90 (2d Cir. 2000).

B.      Rule 23

Federal Rule of Civil Procedure 23(a) contains four "[p]rerequisites" for class

certification:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the
>      claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the
>      interests of the class.

Fed. R. Civ. P. 23(a).  These prerequisites are referred to as "numerosity, commonality,

typicality, and adequacy of representation."  E.g., Amgen Inc. v. Connecticut Ret. Plans

& Trust Funds, 568 U.S. 455, 460 (2013).  Class certification is appropriate only if the

court is satisfied, "after a rigorous analysis", that the proposed class meets each of the

four prerequisites.  See Wal-Mart Stores v. Dukes, 564 U.S. 338, 350–51 (2011).

In addition to satisfying the four prerequisites, a class action must qualify under

at least one of the types of class actions listed in Rule 23(b).  Where, as here, a plaintiff

seeks to certify a class under Rule 23(b)(3), they must show, by a preponderance of the

evidence, that:

> questions of law or fact common to class members predominate over
> any questions affecting only individual members, and that a class
> action is superior to other available methods for fairly and efficiently
> adjudicating the controversy. The matters pertinent to these findings
> include: (A) the class members' interests in individually controlling the
> prosecution or defense of separate actions; (B) the extent and nature
> of any litigation concerning the controversy already begun by or
> against class members; (C) the desirability or undesirability of
> concentrating the litigation of the claims in the particular forum; and (D)
> the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).  The Second Circuit has recognized that predominance is

satisfied "if resolution of some of the legal or factual questions that qualify each class

member's case as a genuine controversy can be achieved through generalized proof,

and if these particular issues are more substantial than the issues subject only to individualized proof." In re U.S. Foodservice Inc. Pricing Litig., 729 F.3d 108, 118 (2d Cir. 2013) (citation and quotation omitted).

In determining whether a putative class meets the requirements of Rule 23, the court must resolve any factual disputes and find any facts relevant to this determination. See In re Initial Pub. Offerings Sec. Litig., 471 F.3d 24, 40 (2d Cir. 2006). The court's obligation to make such determination "is not lessened by overlap between a Rule 23 requirement and a merits issue, even a merits issue that is identical with a Rule 23 requirement." Id. at 41. The Second Circuit grants trial courts substantial discretion in determining whether to grant class certification because of the "longstanding view that the district court is often in the best position to assess the propriety of the class and has the ability, pursuant to Rule 23(c)(4)(B), to alter or modify the class, create subclasses, and decertify the class whenever warranted." In re Sumitomo Copper Litig., 262 F.3d 134, 139 (2d Cir. 2001).

## IV.   DISCUSSION

### A.   Article III Standing

Avantus argues that Martinez lacks Article III standing, asserting that he did not suffer a concrete injury as a result of the OFAC alert appearing on his credit report. See Def.'s Mem. at 8–13. The defendant also contends that many members of the putative class lack standing for the same reason or because the OFAC alert on their credit report is actually accurate. See Def.'s Mem. at 13–16.

#### 1.   Martinez Has Standing

As previously noted, establishing Article III standing requires that a plaintiff show "(i) that he suffered an injury in fact that is concrete, particularized, and actual or

imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." TransUnion, 141 S. Ct. at 2203 (citing Lujan, 504 U.S. at 560–61).  For an injury in fact to be "concrete", it must be "real[ ] and not abstract."  Spokeo, 578 U.S. at 340 (quotation and citation omitted).  In assessing concreteness, the court looks to "whether the alleged injury to the plaintiff has a close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts."  TransUnion, 141 S. Ct. at 2204 (citation and quotation omitted).  However, the search for a historical or common-law analogue for the asserted injury does not demand an "exact duplicate in American history and tradition."  Id.

In TransUnion—a class action alleging violations of the FCRA stemming from the publication to a third party of credit reports bearing a misleading OFAC alert—the U.S. Supreme Court explored whether two subgroups within the class had standing.  Id. at 2208.  For the 1,853 class members whose credit reports were provided to third-party businesses, the Court had "no trouble" determining that the plaintiffs had suffered an injury with a "close relationship" to the "reputational harm associated with the tort of defamation."  Id. at 2208–09.  This finding was contrasted with the remaining 6,332 class members who lacked standing because there was no evidence their credit reports bearing the OFAC alert were published to a third party.  Id. at 2209.  As the Court emphasized, "[p]ublication is 'essential to liability' in a suit for defamation."  Id. (citing Restatement of Torts § 577).

In the case at bar, Avantus argues that Martinez did not suffer a reputational harm resembling defamation because there is no evidence that the OFAC alert the defendant published to Nexa Mortgage would "subject him to hatred, contempt, or

ridicule."  <u>See</u> Def.'s Mem. at 9; <u>TransUnion</u>, 141 S. Ct. at 2208 (quotation and citation omitted).  In advancing this position, Avantus attempts to distinguish <u>TransUnion</u> by noting that the report in the named plaintiff's case there affirmatively stated that the consumer was a match for a person on the SDN list, whereas the defendant's report here only indicated a "potential match."  Def.'s Mem. at 10.  However, the <u>TransUnion</u> Court addressed this argument directly, determining that "the harm from being labeled a 'potential terrorist' bears a close relationship to the harm from being labeled a 'terrorist.'" 141 S. Ct. at 2209.  Indeed, the harm flowing from a misleading statement like that had a "sufficiently close relationship" to defamation for the similarly situated class members in that case to have suffered a concrete injury in fact.  <u>Id.</u>  Thus, the defendant's efforts to differentiate the case at bar are unconvincing.

The defendant also attempts to distinguish the <u>TransUnion</u> holding by averring that, even if the OFAC alert could have subjected Martinez to reputational harm, he lacks standing because there is no evidence that the hit actually had that effect.  Def.'s Mem. at 10.  In support of this assertion, the defendant points to Betz's testimony that he never believed that the plaintiff was Maria Icela Chavez Martinez and that Betz was able to identify a lender willing to work with Martinez despite the alert.  <u>See</u> 5/4/22 Betz Dep. at 73–76.  However, an identical argument was raised in <u>TransUnion</u>.  <u>See</u> Brief for Petitioner at 42, <u>TransUnion</u>, 141 S. Ct. 2200, No. 20-297, 2021 WL 409753, at *42 ("Ramirez never presented a single piece of evidence showing that any absent class member suffered any injury on account of having a credit report containing a 'potential match' alert disseminated to a third party.").  Still, the Supreme Court clearly held that class members "whose credit reports were disseminated to third-party businesses

during the class period suffered a concrete harm." TransUnion, 141 S. Ct. at 2212–13.

The reputational harm stemming from the dissemination of a statement of this kind is a

concrete harm on its own, regardless of any detrimental reliance on the statement. See

generally id. at 2209 ("[C]lass members whose reports were disseminated to third

parties suffered a concrete injury in fact under Article III."); see also, e.g., Fernandez v.

RentGrow, Inc., 341 F.R.D. 174, 190 (D. Md. 2022) ("Even absent evidence that the

false information was relied upon . . . [the plaintiff] suffered an injury far more significant

than he would have suffered as the result of a defamatory letter sitting in a drawer.").

Accordingly, Martinez has clearly suffered an injury in fact as a result of Avantus

publishing his credit report bearing the misleading OFAC alert. Relatedly, there is no

dispute that the defendant is responsible for Martinez's reputational injury in fact, nor

that a remedy pursuant to the FCRA's damages provision would redress his injury.

Thus, Martinez does have standing under Article III.

### 2.    Members of the Class Have Standing

The defendant also raises a challenge to the standing of the putative class,

arguing first that the proposed definition may encompass individuals with accurate

OFAC alerts in their credit reports—which would deprive those consumers of Article III

standing—as well as contending that there is no evidence that those with misleading

OFAC matches suffered a concrete injury. See Def.'s Mem. at 13–16. For the reasons

stated above, the court is unpersuaded by the argument that any absent class member

whose credit report was provided to a third-party with a misleading OFAC alert did not

suffer an injury in fact. See discussion supra Section IV(A)(1). Instead, the court will

address defendant's first contention.

Even though individual class members are not required to submit personalized evidence substantiating standing, "no class may be certified that contains members lacking Article III standing."  Denney v. Deutsche Bank AG, 443 F.3d 253, 264 (2d Cir. 2006).  Therefore, a class must be defined "in such a way that anyone within it would have [Article III] standing."  Id.

Here, the proposed class includes anyone in the U.S. during the specified time period about whom Avantus sold a credit report to a third party bearing an OFAC match found using its proprietary UltraAMPS OFAC product.  See Pl.'s Mem. at 2.  Defendant argues that this definition is overly inclusive, as it presumes that all OFAC alerts were inaccurate.  Def.'s Mem. at 13.  Martinez counters by pointing to testimony by a representative of the defendant who said that Avantus makes no effort to ascertain the number of false positive OFAC alerts it disseminates and that she was unaware of a single instance where an OFAC alert correctly matched the consumer to someone on the SDN list.  See 3/25/22 Streeto Dep. at 33–36; Pl.'s Reply at 7.  Indeed, a review of a sample of OFAC hits showed that the overwhelming majority of consumer birthdays differed from that of their "match" on the SDN list.  See Pl.'s Reply at 8 n.3.

Martinez also cites a number of district courts outside this Circuit that have certified a class based on similar admissions about the unreliability of OFAC alerts identified using similar name matching.  See Pl.'s Reply at 7; Fernandez, 341 F.R.D. at 208–09; Patel v. Trans Union, LLC, 308 F.R.D. 292, 302 (N.D. Cal. 2015); Ramirez, 301 F.R.D at 422–23.  While the court could follow that example, there is another way to address the dispute over whether the class definition is too broad: modify it.  See Robidoux v. Celani, 987 F.2d 931, 937 (2d Cir. 1993) ("A court is not bound by the class

13

definition proposed in the complaint and should not dismiss the action simply because the complaint seeks to define the class too broadly."); see also 5 James W. Moore et al., Moore's Federal Practice § 23.21[6] (3d ed. 2017) ("The court may, in its discretion . . . modify the definition of the proposed class to provide the necessary precision or to correct other deficiencies.").  By altering the class definition to exclude any potentially accurate OFAC alerts, the court ensures that every absent plaintiff has suffered an injury in fact and, accordingly, has standing under Article III.  Thus, the court amends the class definition to be:

> All persons residing in the United States and its Territories about whom Defendants sold a consumer report to a third party that included any OFAC record—where there is not a match between the date of birth, address, or social security number of the subject of the report and the corresponding person on the SDN list—using its proprietary UltraAMPS OFAC product, during the period beginning July 6, 2020, and continuing through thirty (30) days before the date of notice to the class.

While it is possible that the prior definition already limited the class only to people with Article III standing, this amendment makes clear that it does.  With the change outlined above, the class has standing.

B.    Rule 23(a)

The plaintiffs must also satisfy the requirements for class certification under Federal Rule of Civil Procedure 23(a).  As the court discusses below, the plaintiffs meet the criteria to certify their putative class.

1.    Numerosity

The first prerequisite for class certification is that "the class is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "The numerosity requirement in Rule 23(a)(1) does not mandate that joinder of all parties be impossible—only that the difficulty or inconvenience of joining all members of the class

make use of the class action appropriate."  Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C., 504 F.3d 229, 244–245 (2d Cir. 2007).

Numerosity is presumed for a class in excess of forty members.  See Consol. Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995); Vellali v. Yale Univ., 333 F.R.D. 10, 16 (D. Conn. 2019).  Here, using the prior class definition, Martinez identified a proposed class of at least 5,454.  See Pl.'s Mem. at 8–9.  Given the testimony that the defendant could not identify a single accurate OFAC alert, see 3/25/22 Streeto Dep. at 33–36, as well as the review of a sample of OFAC alerts that underscored their overwhelming inaccuracy, see Pl.'s Reply at 8 n.3, there is no evidence to suggest that the altered definition will significantly reduce that figure. Indeed, the defendant does not contest that the proposed class satisfies the numerosity requirement.  See Def.'s Mem. at 16–19.  As such, the plaintiff meets the numerosity prong of Rule 23.

### 2.    Commonality

The second prerequisite for class certification is that "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'"  Wal-Mart, 564 U.S. at 349–50 (quoting Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 157 (1982)).  To satisfy the commonality requirement, the "claims must depend upon a common contention" which "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  Id. at 350. However, "[m]inor factual differences will not preclude class certification if there is a

common question of law."  Mahon v. Chicago Title Ins. Co., 296 F.R.D. 63, 73 (D. Conn. 2013) (quotation and citation omitted).

Here, Martinez avers that there are questions of both law and fact common to the class.  Pl.'s Mem. at 9.  Indeed, each member of the class suffered the same reputational injury in fact as a result of Avantus' dissemination of a misleading OFAC alert to a third-party business.  See discussion supra Section IV(A)(2).  Moreover, each member's claim turns upon the same legal questions of whether the defendant's name-matching logic runs afoul of the FCRA's requirement that a consumer reporting agency "follows reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates", and, if so, whether such a violation was willful.  15 U.S.C. § 1681e(b).

Defendant counters by asserting that, because some disclaimer language published separately in the credit report is not identical for all members of the class, see New Fraud Disclaimer, there is not a common legal question capable of resolution with "one stroke."  Def's Mem. at 17.  However, this argument fundamentally misunderstands the claim at issue.  Defendant's efforts to disclaim potential inaccuracies in the credit reports they sell is unrelated to whether they are following "reasonable procedures to assure maximum possible accuracy."  15 U.S.C. § 1681e(b); see also Cortez v. Trans Union, LLC, 617 F.3d 688, 709 (3d Cir. 2010) (noting that section 1681e(b)'s "maximum possible accuracy" standard requires more "than merely allowing for the possibility of accuracy.").  As such, the underlying claim turns upon the consistency of the name-matching logic rather than any additional disclaimer offered by Avantus.  See Patel, 308 F.R.D. at 303 ("[T]his case is not about labels or header names: the issue is the

16

(in)accuracy of all the alerts, regardless of label.").  And because the name-matching logic upon which the UltraAMPS OFAC product relies was the same for all members of the class, see 3/25/22 Delaporta Dep. at 31; 3/25/22 Streeto Dep. at 22, the extent to which that procedure flouts the FCRA is a shared legal question.

Accordingly, the plaintiff satisfies the commonality prong of Rule 23.

### 3.    Typicality

The third prerequisite for class certification is that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  Typicality "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."  Cent. States, 504 F.3d at 245 (quotation and citation omitted).  "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims."  Robidoux, 987 F.2d at 936–37; see also Wynn v. N.Y.C. Hous. Auth., 314 F.R.D. 122, 126 (S.D.N.Y. 2016) ("The typicality requirement may be satisfied where injuries derive from a unitary course of conduct by a single system" (quotation marks omitted)).  On the other hand, "[a] lack of typicality may be found in cases where the named plaintiff was not harmed by the conduct he alleges to have injured the class or the named plaintiff's claim is subject to specific factual defenses atypical of the class."  Wynn, 314 F.R.D. at 126–27 (quotations and brackets omitted).

Here, the plaintiff's claim arises from the same course of events and turn on the same legal issues as the claims of class members: the defendant's alleged violation of the FCRA stemming from the dissemination to a third party of a credit report containing

a misleading OFAC alert.  Defendant asserts that plaintiff's claim is not typical because each of the class members' claims arise in different transactional contexts.  Def.'s Mem. at 18.  However, whether the credit report bearing the OFAC alert was published as part of a loan application as opposed to a preapproval application—or as part of an application for a home rather than an automobile or credit card, see Def.'s Mem. at 18–19—is precisely the kind of minor factual variation that does not impact typicality.  See Robidoux, 987 F.2d at 936–37.  Crucially, these small differences do not alter the "similar legal arguments" advanced "to prove the defendant's liability."  Cent. States, 504 F.3d at 245 (quotation and citation omitted).  Thus, the court concludes that the typicality requirement has been met.

4.    Adequacy

The fourth prerequisite for class certification is that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  Whether representation is adequate hinges on two inquires: whether (1) a "plaintiff's interests are antagonistic to the interest of other members of the class" and (2) a "plaintiff's attorneys are qualified, experienced[,] and able to conduct the litigation."  Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp., 222 F.3d 52, 60 (2d Cir. 2000).  The adequacy requirement "'tend[s] to merge' with the commonality and typicality criteria," all of which "serve as guideposts for determining whether . . . maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."  Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 626 n.20 (1997) (citing Falcon, 457 U.S. at 157, n.13 (1982)).

a.    Class Representatives

The plaintiff is an adequate class representative because his interests are aligned and interrelated to those of the proposed class.  See discussion supra Sections IV(B)(2)–(3).  Moreover, because the suit seeks statutory damages for the defendant's alleged violations of the FCRA, Martinez does not possess interests antagonistic to the absent class members.  Defendant's only argument against adequacy is that Martinez lacks standing and that he did not suffer the same reputational injury as those he seeks to represent.  See Def.'s Mem. at 16.  However, the court has already considered and rejected these arguments.  See, supra, Sections IV(A)(1)–(2).

b.    Counsel

The defendant does not challenge the adequacy of proposed class counsel: Francis Mailman Soumilas, P.C. and Sarah Poriss.  Poriss has practiced exclusively in the realm of consumer protection for 20 years, and Francis Mailman Soumilas has substantial experience in class action litigation, including FCRA class actions.  See Plaintiff's Exhibit 11, Firm Biography of Francis Mailman Soumilas, P.C. (Doc. No. 66–11); Plaintiff's Exhibit 12, Declaration of Sarah Poriss (Doc. No. 66–12).  So far, counsel has been actively engaged in and demonstrated proficiency at all stages of the suit.  Thus, the court concludes that Francis Mailman Soumilas and Sarah Poriss are "qualified, experienced[,] and able to conduct the litigation."  Baffa, 222 F.3d at 60.

C.    Rule 23(b)(3)

Martinez contends that the class should be certified under Rule 23(b)(3).  In addition to satisfying the four requirements of Rule 23(a), to qualify under Rule 23(b)(3) a plaintiff must show that, for the proposed class, "the questions of law or fact common to class members predominate over any questions affecting only individual members,

and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

        a.    <u>Predominance</u>

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  <u>Anchem</u>, 521 U.S. at 623.  Although similar to commonality, predominance is "more demanding" and "requires not only that there be disputed issues that can be resolved through 'generalized proof,' but also that 'these particular issues are more substantial than the issues subject only to individualized proof.'"  <u>Damassia v. Duane Reade, Inc.</u>, 250 F.R.D. 152, 159 (S.D.N.Y. 2008) (quoting <u>Moore v. PaineWebber, Inc.</u>, 306 F.3d 1247, 1252 (2d Cir. 2002)).

Avantus argues that Martinez has not satisfied the requirements of Rule 23(b)(3) because the defendant will be forced to engage in thousands of mini-trials to establish standing for absent class members.  Def.'s Mem. at 20.  Again, this argument has been considered and rejected.  <u>See</u>, <u>supra</u>, Section IV(A)(2).  Individualized issues pertaining to the type of underlying application, whether the third-party recipient of the credit report believed the OFAC alert to be accurate, the extent to which a class member was deprived of credit opportunities, and the degree of reputational harm actually suffered are irrelevant to standing.  <u>Id.</u>  Further, the core inquiries in this case—whether the name-matching logic runs afoul of the FCRA and whether that violation was willful—can be resolved through generalized proof and are more substantial than any individualized issue.  <u>See, e.g.</u>, <u>Patel</u>, 308 F.R.D. at 308–09; <u>Fernandez</u>, 341 F.R.D. at 212.  As plaintiff points out, common issues also predominate the question of damages, because the class-wide pursuit of statutory and punitive damages greatly diminish the need for

individual inquiry.  See Pl.'s Mem. at 12.  Thus, Rule 23(b)(3)'s predominance requirement is satisfied.

### b.   Superiority

In assessing whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy," Rule 23(b)(3) directs courts to consider:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).  "While Rule 23(b)(3) sets out four individual factors for courts to consider, manageability 'is, by [ ] far, the most critical concern in determining whether a class action is a superior means of adjudication.'"  Sykes v. Mel S. Harris & Assocs., LLC, 780 F.3d 70, 82 (2d Cir. 2015) (quoting 2 William B. Rubenstein, Newberg on Class Actions § 4.72 (5th ed. West 2014)).  A class action is generally a superior method of adjudication where "class-wide litigation of common issues will reduce litigation costs and promote [judicial] efficiency."  Mahon, 296 F.R.D. at 78 (quotation and citation omitted).

Here, the defendant contests only the manageability prong of the superiority requirement.  See Def.'s Mem. at 31.  However, their challenge is rooted in the same argument about individualized issues with determining whether absent class members have Article III standing that the court has already rebuffed.  See, supra, Section IV(A)(2); see also, supra, Section IV(C)(a).  Given the common factual and legal questions that predominate the case as well as the plaintiff's decision to pursue

statutory damages, manageability weighs in favor of proceeding as a class.

Additionally, the court can discern no reason why a putative class member would have

an individual interest in controlling the litigation.  Nor is the court aware of any similar

suit that has already been initiated by an absent member of the class or any reason why

Connecticut would be an undesirable forum for this case.

Ultimately, proceeding as a class action "would achieve economies of time,

effort, and expense, and promote . . . uniformity of decision as to persons similarly

situated, without sacrificing procedural fairness or bringing about undesirable results."

Anchem, 521 U.S. at 615 (quoting Fed. R. Civ. P. 23(b)(3) advisory committee's note to

1966 amendment).  Accordingly, Martinez has satisfied Rule 23(b)(3)'s superiority

requirement.

     D.    Rule 23(g)

Under Federal Rule of Civil Procedure 23(g)(1), "a court that certifies a class

must appoint class counsel."  To appoint class counsel, the court must consider four

factors to determine whether counsel will fairly and adequately represent the interest of

the class:

> (i) the work counsel has done in identifying or investigating potential claims
> in the action;
> (ii) counsel's experience in handling class actions, other complex litigation,
> and the types of claims asserted in the action;
> (iii) counsel's knowledge of the applicable law; and
> (iv) the resources that counsel will commit to representing the class. . . .

Fed. R. Civ. P. 23(g)(1)(A).  The court may also weigh "any other matter pertinent to

counsel's ability to fairly and adequately represent the interests of the class. . . ."  Fed.

R. Civ. P. 23(g)(1)(B).

As previously discussed, plaintiff's counsel has experience litigating FCRA class actions and has represented parties bringing similar claims arising from misleading OFAC alerts.  Plaintiff's Exhibit 11, Firm Biography of Francis Mailman Soumilas, P.C.; Plaintiff's Exhibit 12, Declaration of Sarah Poriss.  Counsel collectively possess the experience, knowledge, and resources to adequately represent the class in this litigation.  The court therefore appoints Francis Mailman Soumilas, P.C. and Sarah Poriss as class counsel.

## V.   CONCLUSION

For the foregoing reasons, plaintiff's Motion for Class Certification (Doc. No. 62) is granted as to the redefined class articulated above.  The court also grants plaintiff's Motion to Seal Portions of Reply Memorandum and Exhibit B (Doc. No. 74).  Consistent with the Scheduling Order (Doc. No. 35), dispositive motions must be filed no later than 45 days from today.

**SO ORDERED.**

Dated at New Haven, Connecticut this 5th day of January 2023.


  /s/ Janet C. Hall
Janet C. Hall
United States District Judge