# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| MARVEL MARTINEZ, on behalf of himself and all others similarly situated,<br><br>       Plaintiff,<br><br>  v.<br><br>AVANTUS, LLC and XACTUS, LLC, successor in interest to certain assets of AVANTUS, LLC,<br><br>       Defendants. | Civil Action No. 3:20-cv-01772-JCH |

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT

James A. Francis (*pro hac vice*)
John Soumilas (*pro hac vice*)
Lauren KW Brennan (*pro hac vice*)
FRANCIS MAILMAN SOUMILAS, P.C.
1600 Market Street, Suite 2510
Philadelphia, PA 19103
(215) 735-8600
jfrancis@consumerlawfirm.com
jsoumilas@consumerlawfirm.com
lbrennan@consumerlawfirm.com

Sarah Poriss, Esq. (Fed. Bar No. Ct24372)
777 Farmington Avenue
West Hartford, CT 06119
(860) 233-0336
sarahporiss@prodigy.net

*Counsel for Plaintiff and the Class*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................ ii

I.    INTRODUCTION ................................................................................................... 1

II.   HISTORY OF THE LITIGATION AND MEDIATION ...................................... 2

      A.    Nature of the Case ....................................................................................... 2

      B.    This Litigation .............................................................................................. 3

      C.    Negotiations Leading to the Settlement Agreement and Preliminary
            Approval ........................................................................................................ 4

      D.    The Settlement Terms .................................................................................. 5

      E.    The Notice Process and Reaction of the Settlement Class ....................... 8

III.  THE SETTLEMENT IS FAIR AND ADEQUATE ............................................. 9

      A.    The Settlement Is Procedurally Fair ....................................................... 10

      B.    The Settlement Is Substantively Fair, Reasonable, and Adequate....... 11

      C.    The Service Award Requested Is Fair and Should Be Approved by the
            Court ............................................................................................................ 19

IV.   CONCLUSION ..................................................................................................... 21

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### <u>CASES</u>

*In re "Agent Orange" Prod. Liab. Litig.*,
  597 F. Supp. 740 (E.D.N.Y. 1984) ........................................................................16

*Backman v. Polaroid Corp.*,
  910 F.2d 10 (1st Cir. 1990) ....................................................................................17

*Berger v. Compaq Computer Corp.*,
  257 F.3d 475 (5th Cir. 2001) ..................................................................................16

*Berkey Photo, Inc. v. Eastman Kodak Co.*,
  603 F.2d 263 (2d Cir. 1979) ...................................................................................17

*Bozak v. FedEx Ground Package Sys., Inc.*,
  2014 WL 3778211 (D. Conn. July 31, 2014) .........................................................20

*Chatelain v. Prudential-Bache Sec.*,
  805 F. Supp. 209 (S.D.N.Y. 1992) .........................................................................16

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974) ................................................................11, 12, 14, 18

*Connecticut Fair Housing Ctr v. CoreLogic Rental Propert Sols., LLC*,
  2023 WL 4669482 (D. Conn. July 20, 2023) .........................................................12

*D'Amato v. Deutsche Bank*,
  236 F.3d 78 (2d Cir. 2001) .....................................................................................10

*Esposito v. Nations Recovery Ctr., Inc.*,
  2021 WL 2109077 (D. Conn. May 25, 2021) .........................................................20

*In re Holocaust Litig.*,
  80 F. Supp. 2d 164 (S.D.N.Y. 2000) ................................................................12, 14

*Joel A. v. Giuliani*,
  218 F.3d 132 (2d Cir. 2000) .....................................................................................9

*Kennedy v. Whitley*,
  539 F. Supp. 3d 261 (D. Conn. 2021) .....................................................................11

*Leo v. AppFolio, Inc*,
  No. 3:17-cv-05771-RJB, ECF 62 (W.D. Wash. July 8, 2019) ...............................17

*Leo v. AppFolio, Inc*,
    No. 3:17-cv-05771-RJB, ECF 66 (W.D. Wash. July 18, 2019) ....................................... 17-18

*In re Luxottica Grp. S.p.A. Sec. Litig.*,
    233 F.R.D. 306 (E.D.N.Y. 2006) ..............................................................................10, 11, 13

*Maley v. Del Global Technologies Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002)..............................................................................18, 19

*Massiah v. MetroPlus Health Plan, Inc.*,
    2012 WL 5874655 (E.D.N.Y. Nov. 20, 2012)........................................................................20

*McIntyre v. RealPage, Inc.*,
    No. 2:18-cv-03934-CFK, ECF 156 (E.D. Pa. Mar. 24, 2023)................................................18

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
    246 F.R.D. 156 (S.D.N.Y. 2007) ..............................................................................................9

*Newman v. Stein*,
    464 F.2d 689 (2d Cir. 1972)....................................................................................................16

*In re PaineWebber Ltd. P'ships Litig.*,
    171 F.R.D. 104 (S.D.N.Y.) .......................................................................................12, 13, 16

*Patel v. Trans Union, LLC*,
    No. 3:14-cv-0522-LB, ECF 167 (N.D. Cal. Mar. 11, 2018)...................................................17

*Ramirez v. Trans Union LLC*,
    951 F.3d 1008 (9th Cir. 2020) ................................................................................................18

*Sapp v. Experian Information Solutions, Inc.*,
    2013 WL 2130956 (E.D. Pa. May 15, 2013) .................................................................... 12-13

*Shimon v. Equifax Info. Services, LLC*,
    994 F.3d 88 (2d Cir. 2021)......................................................................................................12

*In re Sturm, Ruger, & Co., Inc. Secs. Litig.*,
    2012 WL 3589610 (D. Conn. Aug. 20, 2012) ........................................................................14

*In re Synchrony Fin. Sec. Litig.*,
    2023 WL 4992933 (D. Conn. Aug. 4, 2023) ...........................................10, 11, 12, 13, 18, 19

*Torres v. Gristede's Operating Corp.*,
    2010 WL 5507892 (S.D.N.Y. Dec .21, 2010) .......................................................................20

*Trans World Airlines, Inc. v. Hughes*,
    312 F. Supp. 478 (S.D.N.Y. 1970), *modified*, 449 F.2d 51 (2d Cir. 1971)............................17

*In re Veeco Instruments Inc. Sec. Litig.*,
2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007)....................................................13, 16

*In re Visa Check/Mastermoney Antitrust Litig.*,
297 F. Supp. 2d 503 (E.D.N.Y. 2003) ...................................................................19

*Wal-Mart Stores, Inc. v. VISA U.S.A. Inc.*,
396 F.3d 96 (2d Cir. 2005)......................................................................................9

*Weinberger v. Kendrick*,
698 F.2d 61 (2d Cir. 1982)...................................................................................9, 10

*In re WorldCom, Inc. Sec. Litig.*,
388 F. Supp. 2d 319 (S.D.N.Y. 2005)......................................................................19

*Wright v. Stern*,
553 F. Supp. 2d 337 (S.D.N.Y. 2008)........................................................................9

## STATUTES & FEDERAL RULES

Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681x, *et seq.* ............................... *passim*

15 U.S.C. § 1618e(b) ...............................................................................3, 7, 20

15 U.S.C. § 1681n....................................................................................15, 19

15 U.S.C. § 1681n(a) ...................................................................................15

15 U.S.C. § 1681o(a) ...................................................................................15

FED. R. CIV. P. 23.........................................................................................1

FED. R. CIV. P. 23(e) ..................................................................................11

FED. R. CIV. P. 23(e)(2) ..............................................................................11

FED. R. CIV. P. 23(f)..................................................................................4, 16

## OTHER AUTHORITIES

5 *Newberg on Class Actions* § 13:50 (5th ed. 2015)........................................13

## CONSTITUTIONAL PROVISIONS

Article III ...............................................................................................15

## I.    INTRODUCTION

Plaintiff Marvel Martinez, by his counsel, submits this Memorandum of Law in support of his motion for final approval of the proposed settlement reached in this class action.

By this motion, Plaintiff respectfully requests this Court to enter an Order approving the terms of the Settlement Agreement[1] between Plaintiff and Defendants Avantus, LLC and Xactus, LLC, successor in interest to certain assets of Avantus, LLC ("Avantus" or "Defendants"") as fair, adequate, reasonable, and in the best interests of Settlement Class Members, certifying the classes for settlement purposes, and ordering the parties to consummate the Settlement Agreement in accordance with its terms.

This Court found on its initial review that the settlement is fair, reasonable, and adequate; that the requirements of Fed. R. Civ. P. 23 are met; and directed notice to the classes. ECF 105. Pursuant to that order, notice of the pendency of this action, the terms of the proposed settlement, the opportunity to make a claim, opt out, or object, and the date of the February 27, 2024 final approval hearing was sent to 25,162 individuals by first class mail beginning on December 12, 2023.  *See* Declaration of Frank Barkan of Continental DataLogix, LLC ("Barkan Decl."), filed herewith.[2]

The settlement represents a fair and reasonable resolution for the Class because it achieves meaningful practice changes by Defendants which are designed to prevent the risk to both Settlement Class Members and other consumers that they will be the subject of future inaccurate

---

[1]    The Settlement Agreement was filed with the Court as ECF 104-1. All capitalized terms herein have the meanings defined in the Settlement Agreement.

[2]    Pursuant to the Settlement Agreement, the Settlement Administrator must prepare and submit a Declaration of Mailing fifteen (15) days prior to the Final Approval hearing, or February 12, 2024.  ECF 104-1 at ¶ 6.8.  The Settlement Administrator will provide an updated version of the declaration submitted herewith on that date, which Class Counsel will submit to the Court.

reporting. Furthermore, the Settlement provides substantial economic relief, in the form of automatic payments of $100 to all Settlement Class Members, and the opportunity to make a claim to receive a higher payment.

Pursuant to the Settlement Agreement, the deadline for Settlement Class Members to make claims, request exclusion, or submit objections to the Settlement is February 10, 2024. As of the date of this filing, not a single class member has requested exclusion. Barkan Decl. at ¶¶ 12-13. Likewise, as of this filing, there have been no objections to any portion of the Settlement Agreement. *Id.* To date, 1,456 Settlement Class Members have chosen to actively participate in the settlement by submitting valid claims for higher damages payments, which are expected to be in excess of $1,600.00 each. *Id.* at ¶ 14. This response by the class indicates a fair settlement.

For the above reasons and for the additional reasons set forth in greater detail below, the settlement is fair, reasonable, and adequate to the Settlement Class and should be granted final approval.

## II.  HISTORY OF THE LITIGATION AND MEDIATION

### A.  <u>Nature of the Case</u>

This matter involves Defendants' use of name-only matching logic to prepare consumer reports that falsely associated innocent consumers, including Plaintiff and Class Representative Marvel Martinez, with terrorists, drug traffickers, arms dealers, and other enemies of the United States who appear on the Treasury Department's Office of Foreign Assets Control's list of Specially Designated Nationals and Blocked Persons (the "OFAC list"). Defendants prepared a consumer report concerning Plaintiff Marvel Martinez in connection with his application for mortgage financing, and followed its standardized procedures for its proprietary "UltraAMPS OFAC search" which considered only first and last name when determining whether to place a record from the OFAC list on the report. As a result, Defendants included an OFAC record related

to a "Maria Icela Chavez Martinez," a drug trafficker with a completely different date of birth from Plaintiff's, on his report.

Plaintiff brought this consumer class action under the federal Fair Credit Reporting Act ("FCRA") to address this systemic misreporting of information from the OFAC list, asserting that Defendants failed to follow "reasonable procedures to assure the maximum possible accuracy" of OFAC information included on consumer reports.  15 U.S.C. § 1618e(b).

**B.**   **This Litigation**

Plaintiff filed his Complaint on November 25, 2020, and Defendants filed an Answer on February 11, 2021. ECF 1, 10.  The case was stayed briefly pending the resolution by the Supreme Court of the appeal in *TransUnion v. Ramirez.* ECF 37.  The stay lasted approximately one month, listing after the *Ramirez* decision was issued on June 26, 2021. *Id.*

The parties then exchanged in extensive discovery including the production of thousands of pages of documents and depositions of fact witnesses, Defendants' corporate representatives, and Plaintiff and his wife.  The parties also conducted discovery of the third party that obtained Defendants' inaccurate report, and Plaintiff's disclosed expert witness testified at a deposition.

Plaintiff's motion for class certification filed May 20, 2022 was hotly contested through detailed briefing including a disputed sur-reply by Defendants.  ECF 61, 65, 66, 69, 70, 74-76, 78, 79, 83.  Following full briefing, the Court issued an order on January 5, 2023 granting the motion for class certification and certifying the following class of consumers:

> All persons residing in the United States and its Territories about whom Defendants sold a consumer report to a third party that included any OFAC record—where there is not a match between the date of birth, address, or social security number of the subject of the report and the corresponding person on the SDN list—using its proprietary UltraAMPS OFAC product, during the period beginning July 6, 2020, and continuing through thirty (30) days before the date of notice to the class.

ECF 84 at p. 14.  On January 19, 2023, Avantus filed a petition for permission to appeal the class certification decision pursuant to Fed. R. Civ. P. 23(f) with the U.S. Court of Appeals for the Second Circuit.  *See* No. 23-0081 at Doc. 1.  Plaintiff opposed the petition.  *Id.* at Doc. 10.

The Parties then agreed to go to mediation. ECF 85.  Upon an unopposed motion by Avantus, the Second Circuit postponed its ruling on the 23(f) petition while the Parties discussed settlement.  No. 23-0081 at Doc. 13, Doc. 17.

The Parties' settlement discussions were extensive, contentious, and conducted at arms-length.  The Parties met for three day-long mediations on April 13, May 16, and August 16, 2023, and engaged in numerous telephone conferences and exchanges of information surrounding each mediation.  The Parties' negotiations were guided by Rodney Max of Upchurch Watson White & Max, an experienced mediator with substantial experience resolving FCRA class actions.

**C.**    **Negotiations Leading to the Settlement Agreement and Preliminary Approval**

On April 13, 2023, the parties met for a day-long mediation via videoconference with the assistance of Rodney Max of Upchurch Watson White & Max, an experienced mediator with substantial experience resolving FCRA class actions. In preparation for the mediation, counsel for Plaintiff Martinez invested a substantial amount of time reviewing Defendants' production of data on class member identification and preparing a comprehensive mediation statement, reviewing Defendants' mediation statement, and participating in pre-mediation meetings with the mediator and with Defendants' counsel.  The case did not resolve on April 13, 2023, but the Parties agreed to continue their negotiations and conducted a second full day mediation on May 16, 2023, and a third on August 16, 2023.

At the third mediation session on August 16, 2023, the Parties reached an agreement in principle including a signed term sheet. *See* ECF 97.  The Parties then continued their negotiations as part of drafting the complete terms of the agreement by drafting the formal Settlement

Agreement and associated papers including the claim form, designing the notice process, and selecting Continental DataLogix, LLC as Settlement Administrator. Once this work was completed, Plaintiff filed the Motion for Preliminary Approval and for an Order Directing Notice to the Class on November 7, 2023. ECF 103-104. The Court granted preliminary approval on November 14, 2023. ECF 105.

**D.    The Settlement Terms**

The Settlement Agreement resolves the claims of the proposed Settlement Class, defined as:

> All persons residing in the United States and its Territories about whom Defendants sold a consumer report to a third party that included any OFAC record where there is not a match between the date of birth, address, or social security number of the subject of the report and the corresponding person on the SDN list, using its proprietary UltraAMPS OFAC product, during the period beginning July 6, 2020 and ending February 28, 2023.

ECF 104-1 at § 1.10. The only change from the class definition certified by the Court is the February 28, 2023 end date, which reflects changes in Defendants' practices as a result of the Litigation, discussed below. The Parties estimated in the Settlement Agreement that there were 25,173 individuals meeting the Settlement Class definition.. ECF 104-1 at § 3.2. Defendants ultimately delivered a class list to the Settlement Administrator including 25,174 names and mailing addresses. Barkan Decl. at ¶ 3. The Settlement Administrator determined that 12 of the addresses were outside of the United States and its Territories, leading to a confirmed figure of 25,162 Settlement Class Members. *Id.*

1.    Practice Changes

As a direct result of the litigation, and reflecting an integral component of the relief provided to the Settlement Class through the Settlement, Defendants have confirmed that they have implemented changes to its practices for including reference to a record from the OFAC List

5

on any consumer report it prepares and provides to a third party.  ECF 104-1 at § 4. These changes are intended to prevent future misreporting about Settlement Class Members by ensuring that OFAC List records are matched to consumers using more than just a name.

      2.     <u>Monetary Relief to Settlement Class Members</u>

The Settlement Agreement also provides for substantial monetary benefits for all Settlement Class Members.  The Agreement creates a Settlement Fund of six million seven hundred sixty thousand dollars ($6,760,000.00) that will be used to provide payments to Settlement Class Members, pay for the costs of notice and administration of the settlement, provide a service award to the Class Representative, and pay the agreed amount in attorneys' fees and costs if awarded by the Court. ECF 104-1 at § 5.

Each member of the Settlement Class is entitled to an automatic payment of $100, without the need to submit a claim form.  *Id.* at § 5.2.  All Settlement Class Members also have the opportunity to submit a Claim Form, up to the Claims Submission Deadline set for February 10, 2024.  *Id.* at §§ 10, 12.  The simple, one-page claim form requires Settlement Class Members to attest to damages incurred as a result of inaccurate reporting of an OFAC record on an Avantus report.  *Id.*  To date, 1,515 Settlement Class Members have submitted valid claims.  Barkan Decl. at ¶ 14. Each of these individuals, as well as any additional individuals who submit timely claims by the deadline, will receive (instead of the $100 automatic payment) a *pro rata* share of the Net Settlement Fund  ECF 104-1 at §§ 10, 12. The Net Settlement Fund included a reserve of over $2 million, as well as the amount of any automatic payment checks that are not cashed.  *Id.*  In light of the number of valid claims received to date, and the expected rate of uncashed checks based upon the Settlement Administrator's experience with similar settlements, Class Counsel anticipate that each payment to a successful claimant will be over $1,600.00.

### 3. Service Award to Plaintiff

Further, the Settlement Agreement provides for a service award to Named Plaintiff Martinez of fifteen thousand dollars ($15,000), subject to the Court's approval, in recognition of his efforts in service to the Class and of the broader release he provides to Defendants.  ECF 104-1 at §§ 5.2(b), 13.2.

### 4. Attorneys' Fees and Costs

The Settlement Agreement provides for a payment to Class Counsel, subject to this Court's approval, of an award of attorneys' fees and litigation costs in an amount of up to one-third (1/3) of the Settlement Fund, namely two million two hundred fifty three thousand three hundred thirty three dollars and thirty three cents ($2,253,333.33).  As detailed in the Motion for Attorneys' Fees and Litigation Costs filed by Class Counsel on January 31, 202, this request is eminently reasonable under the circumstances of this case. ECF 108.

Consistent with the Settlement Agreement, the details of Class Counsel's fee request were made available to Settlement Class Members on the Settlement Website, and no Settlement Class Member has submitted any objection to the requested award. Barkan Decl. at ¶ 12-13.

### 5. Costs of Notice And Settlement Administration

In addition to the amounts laid out above, the Settlement Agreement provides that the costs of the Notice Plan and administration of the Settlement are to be borne by the Settlement Fund. ECF 104-1 at §§ 5.2(d), 6.10.

### 6. Settlement Class Release

The scope of the release here is narrowly tailored to the time period relevant to this matter, the harm identified, and the sums sought. ECF 104-1 at § 13.1. Settlement Class Members release only claims under FCRA section 1681e(b), and do not release any other claims they may have against Defendants unrelated to the subject matter of the Litigation, or for other FCRA causes of

action such as any claim that Defendants failed to conduct a reasonable reinvestigation into a consumer's dispute regarding an OFAC record.

       7.     <u>Cy Pres Recipient</u>

After all of the payments set forth above have been delivered out of the Settlement Fund, funds including those for uncashed checks will be donated to a *cy pres* recipient. ECF 104-1 § 5.2(g). The Parties have selected, subject to the Court's approval, Operation Hope, a nationwide nonprofit focusing on advancing economic opportunity for individuals through financial literacy, homeownership, equal access to the financial system, and small business development. *See* https://operationhope.org/

**E.    <u>The Notice Process and Reaction of the Settlement Class</u>**

Pursuant to the Settlement Agreement and this Court's Order Directing Notice to the Settlement Class, Defendants provided the Settlement Administrator with the Class List containing the names and contact information for 25,162 Settlement Class Members. Barkan Decl. at ¶ 4.[3] The Settlement Administrator began sending notice via U.S. mail on December 12, 2023 after running all addresses on the Class List through the National Change of Addresses Database. *Id.* at ¶¶ 4-5. For notices which were reported as undelivered, the Settlement Administrator attempted to obtain an updated address from one or more commercial search firms or databases, and re-mailed the notices to any such updated address. *Id.* at ¶ 6. After these efforts, 266 notices were returned as undeliverable after a second attempt, resulting in a 97.8 % reach rate. *Id.* at ¶¶ 7-8.

The Class Notices fairly informed the Class Members of the general nature of the lawsuit, the financial and other terms of the settlement particularly significant for the Class Members, the general

---

[3]    As noted above, 12 of the addresses on the class list supplied by Defendants were determined to be outside of the U.S. and its territories, and thus outside the scope of the Settlement Class. Barkan Decl. at ¶ 3.

procedures for and consequences of making a claim, opting out of the Class or objecting to the settlement, and the date of the Final Approval Hearing.  ECF 104-1.  In addition to the mail notice, the Settlement Administrator established https://www.martinezofacclassaction.com/ as the settlement website. Barkan Decl. at ¶ 9.  Information on the Settlement was made available in both English and Spanish on the Settlement Website. *Id.*

The deadline for Settlement Class Members to make claims, object, or request exclusion from the Settlement is set for February 10, 2024.  As of the date of this filing, here have been no objections, and no exclusion request received.  *Id.* at ¶¶ 12-13.  To date, 1,456 valid claims have been submitted, as discussed above.  *Id.* at ¶ 14.  If any objections or exclusion requests are submitted after this filing, Plaintiff will provide a supplemental filing detailing and addressing them.

### III.   THE SETTLEMENT IS FAIR AND ADEQUATE

A court may approve a settlement that is binding on the class only if it determines that the settlement is "fair, adequate, and reasonable, and not a product of collusion." *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000). This evaluation requires the court to consider "both the settlement's terms and the negotiating process leading to settlement." *Wal-Mart Stores, Inc. v. VISA U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *Wright v. Stern*, 553 F. Supp. 2d 337, 343 (S.D.N.Y. 2008); *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 246 F.R.D. 156, 165 (S.D.N.Y. 2007). While the decision to grant or deny approval of a settlement lies within the broad discretion of the trial court, a general policy favoring settlement exists, especially with respect to class actions. *Wright*, 553 F. Supp. 2d at 344; *see also Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982) (The settlement of complex class action litigations are clearly favored by the courts.). Moreover, "[c]lass action suits readily lend themselves to compromise because of the

difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation." *In re Luxottica Grp. S.p.A. Sec. Litig.*, 233 F.R.D. 306, 310 (E.D.N.Y. 2006); *see also Weinberger*, 698 F.2d at 73 ("There are weighty justifications, such as the reduction of litigation and related expenses, for the general policy favoring the settlement of litigation.").

A.    **The Settlement Is Procedurally Fair**

A strong initial presumption of fairness attaches to a proposed settlement if it is reached by experienced counsel after arm's-length negotiations, and great weight is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation. *Luxottica Grp.*, 233 F.R.D. at 315.  A court may find the negotiating process is fair where, as here, "the settlement resulted from 'arm's-length negotiations and that plaintiffs' counsel have possessed the experience and ability . . . necessary to effective representation of the class's interests.'" *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (citation omitted); *In re See also In re Synchrony Fin. Sec. Litig.*, 2023 WL 4992933, at *5-6 (D. Conn. Aug. 4, 2023) (citing *D'Amato* and concluding that presumption of fairness as met because meaningful discovery took place and parties were represented by skilled and experienced counsel).

This initial presumption of fairness and adequacy applies here because the Settlement Agreement was reached by experienced, fully-informed counsel taken, and after arm's-length negotiations, including multiple full-day mediation sessions with the assistance of an experienced mediator, Rodney Max.  Furthermore, counsel for both parties were fully informed of the merits and weaknesses of the case, after the completion of robust discovery including the exchange of written discovery and third party discovery, voluminous document production, and several depositions.  The Parties, both represented by highly experienced and skilled counsel, were also able to test their legal theories through contested class certification briefing.  All of these considerations confirmed the reasonableness of the Settlement, and thus, little doubt exists that

this Settlement is entitled to the presumption of procedural fairness dictated by Second Circuit law.

**B.**    **The Settlement Is Substantively Fair, Reasonable, and Adequate**

As stated above, courts within the Second Circuit observe the universal standard for determining whether a proposed class settlement is substantively fair: whether the proposed settlement is "'fair, reasonable, and adequate.'" *Luxottica Grp.*, 233 F.R.D. at 310 (citation omitted). The Second Circuit has identified nine factors that courts should consider in deciding whether to approve a proposed settlement of a class action:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) (citations omitted). All nine factors need not be satisfied. Instead, the court should look at the totality of these factors in light of the specific circumstances involved. *In re Synchrony Fin. Sec. Litig.*, 20213 WL 4992933, at *6.[4]

As demonstrated below, the Settlement satisfies each of the relevant criteria set forth above. Indeed, this Settlement represents a strong result for the Class. As such, the Settlement clearly warrants this Court's final approval.

---

[4]    Nothing about the 2018 Amendments to Rule 23(e) changes the application of these existing factors – indeed, they overlap almost entirely. Fed. R. Civ. P. 23(e)(2) and Advisory Committee Note on 2018 Amendment to Subdivision (e)(2). *See also Kennedy v. Whitley*, 539 F. Supp. 3d 261, 266 (D. Conn. 2021) (noting overlap between *Grinnell* factors and Rule 23(e) as amended).

1.    The Complexity, Expense and Likely Duration of the Litigation

"The first *Grinnell* factor requires the Court to consider the complexity, expense, and likely duration of the litigation*." In re Synchrony Fin. Sec. Litig.*, 2023 WL 4992933, at *7. "'Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them' and courts therefore favor class action settlements." *Id.* (quoting *In re Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000)). Absent a settlement, [litigation] costs will only escalate as a result of discovery proceedings, motion practice, trials, and likely appeals." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y.), *aff'd* 117 F.3d 721 (2d Cir. 1997) (*per curiam*).

Absent the settlement here, this case would have proceeded to the merits phase, likely with dispositive motions being filed by one or both Parties.  Furthermore, the stay of Defendants' petition for permission to appeal the class certification decision would have been lifted, likely leading to simultaneous proceedings both at the Second Circuit and in this Court. While the Class Representative believes he would prevail on all issues, there is at least some risk he would not.

Even if Plaintiff was able to prevail regarding class certification issues on appeal, and successfully defeat an expected motion for summary judgment, an expensive trial would most likely ensue.  Trial preparation on both sides would be necessary and a jury trial would eventually be before this Court.  Such a trial would likely present challenges for Plaintiff.  To recover on the claim for statutory damages, Plaintiff would have to prove a willful violation of the FCRA at trial, a high hurdle to clear.  *See Connecticut Fair Housing Ctr v. CoreLogic Rental Propert Sols., LLC*, 2023 WL 4669482, at *24 *(D. Conn. July 20, 2023) (*citing Safeco Ins. Co. v. Burr,* 551 U.S. 47, 56–57 (2007); *Shimon v. Equifax Info. Services, LLC*, 994 F.3d 88, 94 (2d Cir. 2021) (finding a lack of recklessness where the defendant's understanding was reasonable, even if ultimately wrong). *See also Sapp v. Experian Information Solutions, Inc.,* No. 10-cv-4312, 2013 WL

2130956, at *2 (E.D. Pa. May 15, 2013) (noting potential of successful willfulness defense). It would be unrealistic not to expect appeals from any result reached. Avoidance of this unnecessary expenditure of time and resources clearly benefits all parties and the interests of justice more broadly.

      2.      <u>The Reaction of the Classes to the Settlement</u>

The positive reaction of the Class to the Settlement is a significant factor weighing in favor of its fairness and adequacy. Indeed, "'the absence of objectants may itself be taken as evidencing the fairness of a settlement.'" *PaineWebber*, 171 F.R.D. at 126 (citation omitted); *see also Luxottica Grp.*, 233 F.R.D. at 311-12. One court has noted that the reaction of the class to a settlement "is considered perhaps 'the most significant factor to be weighed in considering its adequacy.'" *In re Veeco Instruments Inc. Sec. Litig.*, No. 05-MDL-1695, 2007 WL 4115809, at *7 (S.D.N.Y. Nov. 7, 2007).

Here, in response to the court-approved notice program, not a single Class Member has objected to the Settlement or any of its terms to date, and none have requested exclusion. Thus, the very positive reaction of the Class here underscores the value of the settlement and provides strong support for approval of the Settlement.

      3.      <u>The Stage of the Proceedings and Discovery Completed</u>

Courts look to the extent of discovery conducted for two reasons: (1) after extensive discovery, court may assume that the parties have complete information about the strengths and weaknesses of their respective cases, and (2) "full discovery demonstrates that the parties have litigated the case in an adversarial manner and is, therefore, an indirect indicator that a settlement is not collusive but arms-length." 5 *Newberg on Class Actions* § 13:50 (5th ed. 2015). *See also In re Synchrony Fin. Sec. Litig.*, 2023 WL 4992933, at *7 (citing *PaineWebber,* 176 F.R.D. at 126)).

Here, the parties did in fact engage in robust discovery, and had the benefit of substantial document production and interrogatory answers, including detailed information concerning Defendants' policies and procedures with respect to the UltraAMPS OFAC product. In addition, the parties informally exchanged substantial information in connection with their multiple days of mediation that informed their positions.

Thus, as the parties continued their settlement discussions, they had sufficient information to informatively participate in that proceeding. The final settlement occurred only after the parties were able to assess its fairness adequately. This discovery was "sufficient to provide a clear view of the strengths and weaknesses of their cases and of the adequacy of the settlement." *In re Sturm, Ruger, & Co., Inc. Secs. Litig.*, 2012 WL 3589610, at *5 (D. Conn. Aug. 20, 2012) (internal quotations omitted). As a result of the parties' efforts, the litigation had reached the stage where they could intelligently appraise the case. Therefore, this fact also supports final approval of the Settlement.

4. The Risk of Establishing Liability

In assessing the Settlement, the Court should balance the benefits afforded to the Class, including the immediacy and certainty of a recovery, against the continuing risks of litigation. *See Grinnell*, 495 F.2d at 463; *In re Holocaust Litig.*, 80 F. Supp. 2d at 177. While Class Counsel believe that Plaintiff would eventually prevail, it is also clear that ultimate success is not assured. Indeed, Defendants have consistently denied that they committed any wrongful acts or violations of the law or that they have any liability to the Plaintiff or the Settlement Class.

While Plaintiff strongly believes that the Defendants' activity violated the law as set forth in his Complaint, he also recognizes the risk that the Court or a jury might not make that finding. Specifically, Defendants would likely argue, as they did in their petition for permission to appeal the class certification decision, that its reporting about Settlement Class Members was accurate

within the meaning of the FCRA, and that Plaintiff and Settlement Class Members did not experience an Article III injury.

Although Plaintiff was prepared to take on the burdens of further litigation and present substantial arguments opposing Defendants' positions, the risks he faced were not insignificant.

5.    The Risks of Establishing Damages and Causation

Even if Plaintiff were to overcome the liability obstacles, there are also risks in obtaining statutory damages, which Plaintiff has avoided by virtue of the proposed settlement.    The determination of statutory damages, like the determination of liability, is a complicated and uncertain process, typically involving conflicting opinions.  In this case, Plaintiff and the members of the Settlement Class were seeking statutory damages under the FCRA in the range of $100 to $1,000 per class member, as well as punitive damages.  15 U.S.C. § 1681n.

Each Settlement Class Member will receive an automatic cash payment within this very range, and the opportunity to receive a payment even higher than this range.

Even if Defendant were to be found liable for willful conduct, and Plaintiff and the Classes were awarded statutory damages, that award amount is by no means certain, given the statutory factors that have to be taken into account in making such an award – frequency and persistence of noncompliance with the statute, nature of the noncompliance, and extent to which noncompliance was willful or negligent.  15 U.S.C. § 1681n(a) and § 1681o(a).

Thus, this settlement avoids the litigation risk to the Settlement Class and secures tangible and useful relief that may not be obtainable after trial. The risk of no damages, or a lower damages award at trial supports final approval of the Settlement Agreement.

6.    The Risks of Maintaining the Class Action Through Trial

The settlement here while a petition for permission to appeal the class certification decision was pending before the Second Circuit.  No. 23-0081 at Doc. 13, Doc. 17.  Absent the settlement,

this petition presented the risk that the appeal would be taken and that this Court's certification decision would reversed.

Even if the 23(f) petition were denied, there is no assurance that class status would be maintained, since a court may exercise its discretion to re-evaluate the appropriateness of class certification at any time. *See Chatelain v. Prudential-Bache Sec.*, 805 F. Supp. 209, 214 (S.D.N.Y. 1992) ("Even if certified, the class would face the risk of decertification."); *see also Berger v. Compaq Computer Corp.*, 257 F.3d 475 (5th Cir. 2001) (decertifying class, finding proposed class representatives did not sufficiently remain apprised of status and claims of litigation). While the success of such attempts is uncertain at best, the settlement allows Plaintiff to avoid the delay and expense that would be associated with such proceedings.

      7.    The Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation

The adequacy of the amount offered in settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987). "[T]he Court is not to compare the terms of the Settlement with a hypothetical or speculative measure of a recovery that might be achieved by prosecution of the litigation to a successful conclusion." *Veeco*, 2007 WL 4115809, at *11. The Court need only determine whether the Settlement falls within a "'range of reasonableness.'" *PaineWebber*, 171 F.R.D. at 130 (citation omitted); *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972) ("[I]n any case there is a range of reasonableness with respect to a settlement.").

In light of the questions of fact and law present in this litigation, the value of the proposed settlement substantially outweighs the mere possibility of future relief. The expense of a trial and the use of judicial resources and the resources of the parties would have been substantial.

Moreover, in light of the contested liability, it would not be unusual that any judgment entered would have been the subject of post-trial motions and appeals, further prolonging the litigation and reducing the value of any recovery.  Thus, a settlement is advantageous to all concerned.  An appeal could seriously and adversely affect the scope of an ultimate recovery, if not the recovery itself.  *See Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990) (class won a jury verdict and a motion for judgment N.O.V. was denied, but on appeal the judgment was reversed and the case dismissed); *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir. 1979) (reversal of multimillion dollar judgment obtained after protracted trial); *Trans World Airlines, Inc. v. Hughes*, 312 F. Supp. 478, 485 (S.D.N.Y. 1970), *modified*, 449 F.2d 51 (2d Cir. 1971), *rev'd* 409 U.S. 363, 366 (1973) ($145 million judgment overturned after years of litigation and appeals).

While Plaintiff is confident of his ability to prevail at trial, no final adjudication has been made as to the validity of his claims.  Plaintiff also recognizes that Defendants have continued to deny all liability and allegations of wrongdoing and that Plaintiff's claims would be threatened with dismissal in connection with dispositive motions which would be expected to be filed and briefed.  Through the proposed settlement, Plaintiff has obtained a very reasonable benefit for the Settlement Class, that falls within the statutory damages range provided for in the FCRA.  This settlement allows Plaintiff to avoid the risks described above and ensures an immediate benefit to the Settlement Class. The monetary compensation available under the Settlement Agreement is entirely in line with comparable settlements under the FCRA.  *See, e.g., Patel v. Trans Union, LLC*, No. 3:14-cv-0522-LB, ECF 167 at 9 (N.D. Cal. Mar. 11, 2018) (finally approving class action settlement in which class members received an automatic $400 payment and could submit a claim for an additional, *pro rata* share of a claims pool); *Leo v. AppFolio, Inc,* No. 3:17-cv-05771-RJB, ECF 62 at 7 (W.D. Wash. July 8, 2019) (anticipated $425 for successful claimants), *id*. at ECF 66

(W.D. Wash. July 18, 2019) (finally approving settlement); *McIntyre v. RealPage, Inc.*, No. 2:18-cv-03934-CFK, ECF 156 (E.D. Pa. Mar. 24, 2023) (finally approving settlement in which class members received automatic payments of approximately $300).

Plaintiff believes the proposed settlement is well within the range of reasonableness and should be approved.

8.   The Ability of the Defendant to Withstand a Greater Judgment

Defendants' ability to withstand a judgment commensurate with the size of the certified class was a central question raised in this matter, including by Defendants in their petition for permission to appeal, asserting that a judgment in excess of $20 million could present "damages sufficient to put them into bankruptcy" and creating undue pressure to settle. No. 23-0081 at Doc. 1. Indeed, a jury valued identical FCRA claims regarding OFAC records reported based only on a name at almost $5,000 each, suggesting potential liability of over $120 million. *See Ramirez v. Trans Union LLC*, 951 F.3d 1008, 1034, 1037 (9th Cir. 2020) (affirming jury award of $984.22 in statutory damages per class member and $3,936.88 per class member) (reversed on other grounds). Defendants provided information regarding the downturn in the mortgage market and its financial impact in connection with the mediations, and the parties can provide further detail *in camera* if the Court orders it.

Accordingly, Class Counsel submit that this Court should find that the *Grinnell* factors, taken together, weigh in favor of the Settlement and that the Settlement should be approved.

9.   The Plan of Distribution of the Settlement Fund Is Fair and Reasonable and Should Be Approved by the Court

The standard for approval of a plan of distribution is the same as the standard for approving the settlement as a whole: "'namely, it must be fair and adequate.'" *In re Synchrony Fin. Sec. Litig.,* 2023 WL 4992933, at *10; *Maley v. Del Global Technologies Corp.*, 186 F. Supp. 2d 358,

367 (S.D.N.Y. 2002) (citation omitted); *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 343 (S.D.N.Y. 2005). "'As a general rule, the adequacy of an allocation plan turns on . . . whether the proposed apportionment is fair and reasonable' under the particular circumstances of the case." *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 518 (E.D.N.Y. 2003) (citation omitted), *aff'd sub nom. Wal-Mart Stores, Inc.*, 396 F.3d 96 (2d Cir. 2005).

Generally, a plan of allocation that reimburses class members based on the relative strength and value of their claims is reasonable. *In re Synchrony Fin. Sec. Litig.*, 2023 WL 4992933, at *10 (citing *In re IMAX*, 283 F.R.D. 178, 192 (S.D.N.Y. 2012). In determining whether a plan of allocation is reasonable, courts give great weight to the opinion of experienced counsel. *Id.* (citing *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 163 (S.D.N.Y. 2011)).

Here, the plan for distribution of the Settlement Fund to class members was fully described in the Notice, and has a rational basis rooted in the possibility that some class members experienced substantial actual damages, such as a denial of mortgage financing based upon the inaccurate OFAC record, or significant emotional distress from being confronted by a potential creditor regarding a defamatory link to a terrorist or war criminal. Furthermore, even Settlement Class Members who do not submit a claim will still receive a recovery within the statutory range. 15 U.S.C. § 1681n.

Class Counsel believe that the plan for distribution is fair and reasonable, and respectfully submit that it should be approved by the Court. Notably, no objections to the plan have been filed, which also supports approval. *See Maley*, 186 F. Supp. 2d at 367.

**C.**    **The Service Award Requested Is Fair and Should Be Approved by the Court**

Class Counsel also seeks this Court's approval of a fifteen thousand dollar ($15,000.00) service award for Marvel Martinez, for his willingness to undertake the risks of this litigation and shoulder the burden of such litigation. In this case, there would be no benefit to Class members if

the Class Representative had not stepped forward.  Mr. Martinez devoted significant time and energy to the litigation, including reviewing documents, assisting with compiling responses to written discovery requests, preparing for and sitting for his deposition, and consulting with counsel as necessary.  He has totally fulfilled his obligations as a class representative.

Furthermore, the service award requested is appropriate because Mr. Martinez is giving much broader general release of liability to Defendants, and foregoing any claim he has against Defendants under any other law.  By contrast, the Class release is very limited and releases only claims under FCRA section 1681e(b). *Compare* ECF 104-1 § 13.1 *with* ECF 104-1 §§ 13.2.

"'Service awards are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiff.'" *Esposito v. Nations Recovery Ctr., Inc.,* 2021 WL 2109077, at *8 (D. Conn. May 25, 2021) (quoting *Castagna v. Madison Square Garden, L.P.*, 2011 WL 2208614, at *8 (S.D.N.Y. June 7, 2011)).

Courts in this Circuit have approved service awards of up to $100,000 each and courts routinely approve settlements containing service awards of $10,000 or more per class representative. *See Massiah v. MetroPlus Health Plan, Inc.*, 2012 WL 5874655, at *8 (E.D.N.Y. Nov. 20, 2012) (collecting cases in the Second Circuit approving service awards ranging from $5,000 to $30,000); *Bozak v. FedEx Ground Package Sys., Inc.*, 2014 WL 3778211, at *5 (D. Conn. July 31, 2014) (same); *Torres v. Gristede's Operating Corp.*, 2010 WL 5507892, at *7 (S.D.N.Y. Dec .21, 2010) (finding service awards of $15,000 to each named plaintiff reasonable).

Class Counsel therefore request that Mr. Martinez be approved for the award described above and as set forth in the Settlement Agreement.  The award represents actual and statutory damages under the FCRA, as well as recognition of the benefits and value of the settlement that

the Class Representative achieved for the Settlement Class, and reflects the broader release given. Class members were notified that Class Counsel would request an award for the Class Representative in this amount and no Class member objected to that proposed award.

## IV.  CONCLUSION

The settlement presents an excellent result for the consumers constituting the Class.  They are receiving genuine relief, and the reaction of the class confirms that the result is fair, adequate, and reasonable.  Accordingly, Plaintiff, with Defendant's consent, respectfully moves for entry of the attached proposed Order of Final Approval of the Settlement.


Dated:    February 7, 2024

Respectfully submitted,

MARVEL MARTINEZ, *by his attorneys*,

*/s/  John Soumilas*
James A. Francis*
John Soumilas*
Lauren KW Brennan*
FRANCIS MAILMAN SOUMILAS, P.C.
1600 Market Street, Suite 2510
Philadelphia, PA 19103
Tel: 215-735-8600
Fax: 215-940-8000
jfrancis@consumerlawfirm.com
jsoumilas@consumerlawfirm.com
lbrennan@consumerlawfirm.com

21

Sarah Poriss, Esq.
777 Farmington Avenue
West Hartford, CT 06119
Tel: 860-233-0336
Fax: 866-424-4880
Email: sarahporiss@prodigy.net
Fed. Bar No. Ct24372

*admitted *pro hac vice*

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that, on February 7, 2024, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, and that system will provide a notice of electronic filing to all parties of record in this matter.

*/s/ John Soumilas*
John Soumilas

22